Good morning, Your Honours. May it please the Court, Michael Rubin for Appellant Google. I would like to reserve five minutes of my time for rebuttal. This appeal presents a straightforward question of statutory interpretation. The issue is whether Wi-Fi communications, which everyone agrees are carried by radio waves, are radio communications under the Wiretap Act. To ask that question is to answer it. And under any plausible interpretation of the Wiretap Act, Congress has established that the interception of unencrypted Wi-Fi communications is not a Wiretap Act violation. The Wiretap Act expressly makes all radio communications readily accessible to the general public by definition unless they fall into a specific congressionally defined exception. This provides the public with clear, objective criteria so that it knows which radio communications it can intercept without incurring criminal liability. Congress has defined no exception that applies to unencrypted Wi-Fi communications, which are the only kind at issue in this case. The District Court agreed with this reading of the Act, and that should have led it to dismiss plaintiff's federal Wiretap claim. But it didn't. Instead, it held that Wi-Fi communications are not radio communications under the Act. It reached that end by arbitrarily defining radio communications as being limited to an unstated set of traditional radio services, a meaning that bears no resemblance to the term's ordinary meaning and is not supported by the text or history of the Act. That was legal error. The term radio communication is neither complex nor cryptic, and its ordinary meaning controls. Combining authoritative definitions for radio and communication or looking just at the term radio communication by itself shows that its ordinary meaning is any information transmitted using radio waves. The most relevant related statute in the Federal Code, the Communications Act, has defined radio communications as having that broad ordinary meaning since it was enacted nearly 80 years ago. And the two statutes repeatedly cross-reference each other, including with regard to radio communications. We really needn't go further. The ordinary meaning of radio communications controls and ends the inquiry here. Okay, counsel. Let's take a look at the statute, and I want to make sure I understand what your argument is. Sure. So your argument is going to be based on 2511G? That is correct. 2511G1, which the parties have colloquially referred to as G1. You do not rely on G2? G2 is not relevant. That's correct. Even though that is the provision that is specific to radio communications. You didn't qualify for anything under G2. G2, I would say that both G2 and G1 refer to radio communications. G1 is a much broader provision in the Watertap Act. All right. But G2 is not relevant to this case. That's right. Okay. Just bear with me. Sure. So G2, you don't qualify under G2? No argument has been made under G2 at this point. Under G1, your argument depends on saying that radio communication is a form of electronic communication. That is correct. Okay. And you want to take the definition of readily accessible to the general public from 2510. From 2510.16. That's right. Right. Which doesn't apply to that section by its terms if we're going to go by plain terms because it only applies with respect to radio communication. Well, it does apply on its plain terms for a few reasons. Electronic communication is defined in the statute at 2510.12 as a transmission of any information or intelligence by any kind, including in whole or in part by radio. So the plain language of the statute itself, I think, resolves this question. The legislative history conclusively shuts the door on it, but I think the plain language of the statute actually does the work. So if you look at the legislative history to 2510.12, which is the definition of electronic communication, it says that the use of the word radio in that definition is intended to bring radio communications within the scope of the Act. If you look at the legislative history to the G-1 provision, it makes very clear that 2510.16 is relevant and that unless a radio communication falls within one of the five congressionally defined exceptions in 2510.16, it's not covered by the Act. So the definition of readily accessible to the general public in 2510.16 applies to both references to readily accessible to the general public in 2511G, both 1 and 2. Absolutely. Okay. But with respect to G-1, it only applies to such electronic communications that are radio communications. Absolutely. Okay. It's a little bit of an odd construction, isn't it, that we would have specific exceptions in 25G and 2 for radio communications, but we wouldn't have bothered to accept it there, but we would accept it in a broader definition in G-1, but only with respect to radio communications. That's a pretty cumbersome plain text argument. I'm not sure it is. I mean, I think that there's some complexity into the Wiretap Act, right? Let's just say if you'd done that in your drafting class in law school, you wouldn't have gotten a good grade. I think that – I will stipulate to that. And I don't think that anyone would argue that the Wiretap Act is the model of clarity in that sense. Right. We had ECPA grafted onto the 1968 Wiretap Act in 1986. So it was changing an existing statute rather significantly. Electronic communications and radio communications, that is, any communication transmitted by radio, whether it be electronic or otherwise, weren't protected at all by the Act prior to 1986. So it was a rather significant overhaul, which is partially why I think the statute is a little bit strange. But to explain a little bit what's going on with G-1 and G-2 perhaps is illustrative. The legislative history – and I think this actually is made clear on the face of the statute, but the legislative history is a bit helpful in this. G-2 shows that Congress was articulating and setting forth specific radio services and signals that it understood at the time to be freely interceptable and that it wanted to lay out in the statute and it knew of. And you can see those clearly listed in G-2. In G-1, it clearly was making a generic exception. And it said so in the legislative history. And it did so because listing out every single service that it knew of or that may come along would be cumbersome, would be subject to redundancy, and very critically, it would be obsolete and it would render the statute subject to obsolescence. So it was very clear that what they were doing was creating a twin structure here, one that was going to specifically identify certain communications it was aware of or certain services it was aware of at the time and a generic exception that unless you fell out of, you weren't covered. Mr. Counsel, if your plain argument is right, why in G-2, why in G-2 Roman 2, why didn't Congress just say readily accessible to the general public? That is to intercept any radio communication readily accessible to the general public. That's your argument out of G-1. We don't need all this stuff about government, law enforcement, civil defense, private land mobile or private safety communication systems. It's all irrelevant. If your argument is correct, it was already covered in G-1, wasn't it? G-2 actually sweeps a bit further than G-1, right? G-2 may, but how about Roman 2? I apologize. I misspoke. G-2 sweeps further than G-1. G-1 is limited to electronic communications that are also radio communications. Right. G-2 is radio communications standing alone. That means it would also cover wire communications. So if you look at G-2, that covers wire communications as well. G-2 too. Wire communications are not accepted under G-1. Only electronic communications transmitted by radio. Wait. How do you get wire communications under G-2? Because any – this simply says radio communication. Right. And so if you look, for example, at G-2-1, many of those transmissions for – let's look at the very first clause of G-2-1, any station for the use of the general public. That refers to, if you look at the legislative history, very clearly to essentially what the district court was referring to, traditional radio services. What we know of is FM radio, AM radio, traditional television. That – many of those transmissions are wire communications. They contain the human voice. And so in that circumstance, that is what this exempts. So the G-2 transmission is a much broader exemption from the Wire Type Act than G-1. G-1 refers only to electronic communications that are also wire communications. But it only refers to electronic communications, to those wire communications that are also electronic communications. That's your argument. Let me see if I can be a little more clear. In G-1, the only interceptions that are accepted are any electronic communication that is readily accessible to the general public. And when that electronic communication is also a radio communication, we know what readily accessible to the general public means because we looked at 25, 10, 16 for that defined term. No wire communication is accepted from interception under G-1. Under G-2, any – to intercept any radio communication which is transmitted by the stations or communications systems listed 1 through 4, whether it's an electronic communication or whether it's a wire communication, those are all subject to interception under G-2. Okay. I'm still not entirely sure why Roman-2 under G-2 doesn't just say readily accessible to the general public and wipe out everything that comes before that. Why wouldn't that – why wouldn't that be the same as where you've gotten under this little more convoluted route through G-1? Because that – in that circumstance in G-2, it would also include wire communications, all wire communications, and that's not what Congress was doing. Congress is limiting the wire communications. It's carving out from wiretap coverage in G-2 to those that it's specifying as coming from these stations and communication systems in G-2. And if you were to carve back the words in G-2-2 to just say for – so if you were to have G-2-2 read to intercept any – it's not unlawful to intercept any radio communication which is transmitted by – I suppose by a station readily accessible to the general public, that would be a much broader, less clear description for Congress, and it simply wasn't what it was attempting to achieve in G-2. In G-2, what Congress was attempting to do was to say, we are aware right now of certain particular systems that are traditionally free to intercept, and we want to articulate those, and it did articulate those. In G-1, it said, we understand that it's – that there are a host of other systems that may come along, and we're going to limit the freedom – in its words, the bar on interception to electronic communications that are also radio communications. But it knew it couldn't list those out with risking redundancy, and particularly obsolescence, so it created a generic exception. The legislative history is quite clear on this point. Returning to where I was prior to your question, I think the ordinary meaning of radio communication, which really is the question that the district court had focused on ultimately turning here, is very straightforward. If you look at the authoritative definitions for radio communication, you see that the definition of radio communication, you see that it's any information transmitted using radio waves. And that controls here, which means that for the most part, we really needn't get behind the text of the Act. We needn't get to legislative history. But if we do, it really serves to strengthen the conclusion that Wi-Fi communications are radio communications under the Act, and that when they're not encrypted, they're not unlawful to intercept. For a two-year period starting in 1994, Congress afforded Wiretap Act protection to wireless data communications like Wi-Fi without regard to their encryption status. And it did so by amending the Act to create a new exception that excluded electronic communications from those radio communications the Act made readily accessible to the general public. That action by Congress shows two things beyond any doubt. First, that wireless data communications like Wi-Fi are radio communications under the Wiretap Act. By treating those communications as radio communications when it amended the Act to cover them, Congress confirmed that. And that's true regardless of the fact that Congress repealed that amendment just two years later. Second, the repeal of the amendment restored the Act to its status quo ante, where once again, the Wiretap Act does not make it unlawful to intercept unencrypted Wi-Fi communications. Combined with the ordinary meaning of radio communications, the clear import of this history resolves the appeal. I will gladly get into the many problems with the competing approaches taken by the district court and by plaintiffs with respect to the definition of radio communication, but I think suffice it to say that they're both untethered to the text of the Act, directly contradicted by its history, and create an approach to determining what is a radio communication that's so vague that it would leave the public to guess what is or is not a radio communication on pain of criminal liability. And that sort of grievous ambiguity violates the rule of lenity. So barring any further questions, I'll reserve the remainder of my time. Roberts. Thank you, Mr. Rubin. Thank you. Good morning, Your Honors. May it please the Court. Elizabeth Cabraser for the plaintiffs. So Congress, despite a year of work in both the House and Senate on the Electronic Communications Privacy Act of 1986, somehow failed to foresee the convoluted and quite strained interpretation that Google now wishes to place on its statute. If there is anything that is not clear to the public, it is Google's interpretation of the statute, or rather the statutory deconstruction. Congress defined wire communications, electronic communications, oral communications in that statute. It did not define radio communications in that statute. It also made clear that electronic communications that were configured so as not to be readily accessible to the general public were protected, and it articulated exceptions. The exceptions it articulated were technologies already known, as to which there had been lobbying, as to which there had been concern, because Congress was trying to strike a balance between protecting privacy at the Fourth Amendment level against encroaching technology, and making sure that the public, including business interests, were not going to be chilled in their use of these technologies for appropriate purposes. So, for example, the what we might consider extraordinary degree of attention that Congress paid to the radio hobbyists, because they were intercepting readily accessible signals, radio signals, and they didn't want to be criminalized, and they were hobbyists. And so not only did Congress pay attention to them in 1986, but paid attention to them in 1994 when the CALEA statute, to make assurance double sure, expressly extended protection to electronic communications until the radio hobbyists reminded Congress that that might disrupt the balance. And so the balance was restruck. But the balance that was restruck was protection for electronic communications that were not configured to be accessed by the general public. Now, Congress didn't know about private Wi-Fi networks in 1986, but it knew very well about e-mail. And it knew that both private persons and businesses were using e-mail as a substitute for first-class mail, and it wanted the same level of Fourth Amendment protection for them. It also knew about emerging problems with cell phone technology, and it wanted to protect cell phones. So even though they used radio waves, Congress protected cell phones as wire communications. But this statute was not designed only to address existing technology and to leave other forms of emerging technology unprotected. In other words, there is nothing in the statutory language or the legislative history or the purpose of the statute which says if you are in electronic communication, which is a defined protected term, including the use of radio waves in whole or part, but you use radio waves, you have become a radio communication. You are presumptively presumed to be accessible to the general public by magic, the magic of semantics doing what technology cannot, and therefore you are no longer protected. This is particularly ironic with respect to private Wi-Fi networks, which are configured to travel only a few feet for nanoseconds of time within the home. They are not broadcasting, and they are not radio communications. No one is able to pick those up on off-the-street technology. It's a question of fact, as the district court held, whether or not what Google was using was somehow something off the shelf or, as we allege, something specially designed by its engineers. Okay, counsel. I'm going to have you help me understand then what the statute means. So let's turn to 2511G1. And am I correct that for our purposes a Wi-Fi network, a Wi-Fi is an electronic communication system? Yes, Your Honor. Okay, got that. Okay. Now, readily accessible to the general public is a defined term and is not defined in G1. So are we to look to G, are we to look to 251016 for the definition of readily accessible to the general public? Your Honor, there are two ways to address that. One is to say no, because 251016 limits the, in quotes, readily accessible to the general public to a radio communication. Right. That's why Google tries to make Wi-Fi a radio communication, and it isn't. And then, of course, the other way to look at this is to say that whether something is a radio communication, if it is, it's entitled to these exceptions. But, again, it gets back to whether or not a private Wi-Fi network, which is an electronic communication, is also a radio communication. Okay. So that is the central issue. Is Wi-Fi a radio communication? And that is why the district court, although the simple construction provides an alternative means to affirm the district court, as Your Honor noted, one need go no farther. The district court did go farther as a matter of prudence to make absolutely sure that everything was square. Let me just, just bear with me, okay. I'm a little bit behind you here, and I'm just trying to catch up. So let me just make sure. Let me alter the definition in 16 just slightly. Let's take out that phrase, with respect to a radio communication, so that readily accessible to the general public simply means A through E. Okay. If that is the case, so that we had a general definition in 251016 that could be used every place the phrase readily accessible to the general public appears in 2511G, would Google's actions here be exempt from liability? They might be, but that is not what we have. I understand. I'm going to give you, let you give another 13 minutes of qualifications. I just want to make sure I understand what these definitions mean. So you've already conceded that a Wi-Fi network is an electronic communication. It would not be an electronic, it would be an electronic communication readily accessible to the general public under 16 if we omitted the words, the limitation with respect to a radio communication out of 16, wouldn't it? It would. That would be a very odd thing for Congress to have done, and Congress did not do that. And the reason, and there's a specific reason Congress did not do that, Your Honor, and it is found in the legislative history. And the legislative history, and this is the House report, Representative Kastenmeier presenting the bill to the House, summing up all of the legislative history about ensuring the privacy of electronic communications. He said there's two principles. The first is that legislation which protects electronic communications should be comprehensive and not limited to particular types or techniques. The second principle, quote, is a recognition that what is being protected is the sanctity and privacy of the communication. We should not attempt to discriminate for or against certain methods of communication unless there is a compelling cast that all parties to the communication want the message accessible to the public. Your Honor, if we delete radio communication from 2510.16, we have a statute utterly at odds with the stated purpose of its sponsors, because now, unless these exceptions which apply to traditional radio services and radio broadcasts exist, everything else, all electronic communications, are unprotected. And you could never devise an electronic communication that used in any respect a radio wave and expect it to be protected. That would have the opposite effect of what Congress intended because it would chill technological innovation. Nobody would have Wi-Fi, private Wi-Fi networks today, Your Honor, if that were true. It would simply be too risky. They would be statutorily unprotected, and they're not. Google's real argument is an argument of fact that it wants to develop a trial, which is that the users should have done more to protect themselves. They should have encrypted. I never thought of our home Wi-Fi users as chickens willing to be plucked, but I think that is the Google characterization. The users had to do more. They had to know enough to do more. But a user reading this statute wouldn't know, as written, would never think, I have to do more. I have to do more. I have to do more. Your Honor, the government doesn't think that, and this is a dual process. This is a dual purpose statute. Now, you mentioned that Congress was careful to define various kinds of communications except for the phrase radio communications. So what did Congress mean? Congress meant that it was being comprehensive, as its sponsor said. So the first rule is you protect electronic communications. And then radio communications are an exception. They're an exception because those are technologies which all, there's already a consensus, a public consensus about ready accessibility. The public is using those technologies. So you don't want to criminalize them. And certainly the radio hobbyists were loud and clear that you don't want to criminalize them. Radio communications would have comprehended what? It would have, the AMFM band? CB, Citizens Band. Shortwave? Ham radio, yeah. Shortwave, the same thing as ham? I believe so. Okay. Anything else? There are enumerations in the statute of what would be radio communications that are not protected against interception. There is a broad definition of radio communications. But Your Honor, those, I think, are the traditional radio services of the district court. Television. Pardon me? Television. Television. You pick up television. It uses waves. In fact, the direct TV versus Sparszyski decision that we cited, Judge Easterbrook characterized these radio communications as broadcast in the clear to promote public safety or public discourse. So it's a functional definition. It's a plain language definition. And, of course, it's a contemporary definition, contemporary at the time of the enactment of the 1986 statute, which is the way the Ninth Circuit and I believe all others and the Supreme Court interpret statutes. Moreover, I would say one thing. This interpretation that Google presents is an attempt to create a loophole, obviously intended for its own purposes, big enough to drive those street view vehicles through into users' homes. The problem with it is it would also risk the constitutionality of the statute. The Justice Department currently says, and it is the policy, that they do not use wireless stiffers to intercept Wi-Fi. They think that would be wrong. If this is excused, either under some rule of lenity or a reinterpretation of statute, that loophole is big enough for massive government intrusion. The Fourth Amendment is then at risk, the Fourth Amendment that was the very touchstone of this Act, to make sure, as against the government and private parties, that electronic communications continue to be protected at Fourth Amendment levels into the future, including emerging technologies that Congress could not then imagine specifically, but that it hoped to encourage in terms of innovation. So I think while it may be odd to say that Google has presented an anti-innovation interpretation, we all know that's not what Google is about, that's exactly what happened here. It's unclear. It's dangerous in terms of the privacy rights of persons and an invitation to the government to intrude. And in case there's any doubt as to what the Supreme Court is currently doing in the direct area of Fourth Amendment protection, they are holding the Fourth Amendment against emerging technology, and they are doing that loud and clear. In the Kyllo case, in the United States v. Jones case, and in the case that came down two months ago this term, in Florida v. Jardines, both Justice Scalia and Justice Kagan united in upholding privacy against innovative technology that invades the curtilage. And, of course, in Kyllo, as we know, it was a thermal imaging device used from the street to find heat waves. Now, that thermal imaging device has become more ubiquitous. It can be purchased on eBay today. But that doesn't mean that there's any less Fourth Amendment protection. Technology evolves, but privacy endures. That is the promise of the Fourth Amendment as upheld by the Supreme Court in the 21st century, and that is the premise of the Electronic Communications Privacy Act. Thank you. Thank you, counsel. If I may respond to just a few of the points counsel raised. First of all, with respect to the interpretation of the statute, G-1, G-2, 251016, the district court agreed with the interpretation of the statute that we've put forward, which is the interpretation of the statute that congressional legislative history compels. And with the question that counsel agreed in the affirmative to, which is whether this case ultimately comes down to the certified question, which is the definition of radio communication, the answer to that is yes, and ultimately whether Wi-Fi communication is a radio communication. Your Honor asked counsel what qualified as a radio communication under the Wiretap Act, and quite a few were listed. There are quite a few others that need to be listed to flesh out. It's not simply AM, FM radio and television and things along those lines. The data and background music services carried on subcarriers. The data carried on vertical blanking intervals. Satellite transmissions. Cellular communications. Cordless phone transmissions. And pagers. Tone-only pagers. Things along those lines are all radio communications under the Act. And nowhere in the Act does it equate something constituting a radio communication with the protection of that. And there's been a suggestion that Google has put forward an argument that Wi-Fi is not protected by the Act. That's absolutely not true. The Act doesn't speak to any given technology itself. With respect to the G-1 provision, it speaks to the networks. And any radio communication can easily fall within the Act simply by being encrypted. And social norms have developed around encrypting radio communications. But this concept of Congress not protecting private communications that are radio communications, when the Act was enacted in 1986, the transmission from a cordless phone from the handset to the base station was left outside the scope of the Act. Congress acted later in 1994 to amend the Act to bring those quintessentially private communications. They're the extension of the most sacrosanct communication in the Act, the wire communication, within the scope of the Act. It took an amendment to the Act to do that. Congress is the body that can amend the Act to change this. I'm a bit surprised to hear arguments about innovation, because I think what ultimately chills innovation is lack of clarity. Right now, anyone can assess exactly the set of radio communications that they are at liberty to intercept without risking criminal prosecution by looking at 251016. You can tell whether you can intercept a scrambled or encrypted communication, whether you can intercept something that's on a common carrier system. You know exactly how to walk through that. Under the definition that the plaintiffs have put forward, you have to know how far the communication has traveled. You have to know whether or not what you're receiving with is adequately sophisticated or too sophisticated. And you have to know whether it was intended to be publicly broadcast. None of those factors are readily apparent on a radio wave itself. Radio waves don't indicate their provenance, and they don't indicate the intent of the person who has broadcast it. And plaintiffs agree that cellular communications are radio communications, and their elastic definition collapses right there. And one of the purposes of ECPA is to provide this very clarity, which makes a lot of sense, given that it's a criminal statute. And the rule of lenity would require that in the event that there were some ambiguity here, that it be read in favor of reducing the scope of liability. We can't be reading into crimes that Congress didn't intend to create. There's also been a suggestion here that there's some sort of Fourth Amendment issue. This is a private litigation. There's no government involvement whatsoever. And the Wiretap Act speaks to the interception in this context of radio communications by a private actor. What the government can do is indeed subject to the Fourth Amendment, but that simply has no place here. It's never been briefed, and it never will be in this case. It just has no relevance to this case whatsoever. To the extent that there needs to be a revisiting of the question of the treatment of Wi-Fi because of the advance of technology, that's something that Congress is suited to do. Congress is aware of this issue, and that's something for them to do. It's not something for courts to do by reinterpreting specific definitions, but rather by adding definitions to an undefined term in a way that's contrary to traditional notions of statutory interpretation. Thank you, Your Honors. We thank both counsel for the argument. It was well-briefed and well-argued. It's obviously a very complicated statute. We thank you for your attention today, and the court will stand in recess until this afternoon.
judges: Stafford, Tashima, Bybee